Gordon F. LAWSON, Plaintiff,

v.

Charles F. NUGENT, Defendant.

Civ. A. No. 84–1840.

United States District Court,
D. New Jersey.

Dec. 12, 1988.

Diane M. Acciavatti, Voorhees & Acciavatti, Morristown, N.J., for defendant.

Cynthia A. Walters, Budd, Larner, Gross, Picillo, Rosenbaum, Greenberg & Sade, Short Hills, N.J., for plaintiff.

SUPPLEMENTAL MEMORANDUM
AND ORDER

LIFLAND, District Judge.

Presently before the court are motions *in limine* to determine whether emotional distress damages are recoverable in an action for legal malpractice and to what extent, if any, should certain legal fees be

deducted from an award of damages. Although there is a paucity of case law on these issues, counsel have submitted extensive briefs and presented helpful oral argument. This court holds that plaintiff should be allowed to prove emotional distress damages. The issue of legal fees is reserved pending presentation of evidence at trial.

FACTUAL BACKGROUND

On May 31, 1977, plaintiff and four co-defendants were indicted for the robbery of the Atlantic City Post Office. Plaintiff, who was postmaster at the time of the commission of the crime, was charged with conspiracy to rob the post office, the actual robbery, and putting the post office guard's life in jeopardy by use of a handgun. After his arrest on June 3, 1977, plaintiff retained defendant as defense counsel. On September 27, 1977, allegedly upon the advice of defendant, plaintiff pleaded guilty to all three counts of the indictment including two aggravated counts which charged him with knowledge of the use of a weapon during the commission of the crime. Plaintiff alleges that defendant permitted and recommended the guilty plea without inquiring whether any factual basis existed for the plea, particularly with regard to the use of weapons. On January 7, 1978, plaintiff was sentenced to a 25-year prison term in a maximum security penitentiary.

While in prison, plaintiff retained other legal counsel to seek reduction of his sentence. On December 21, 1982, the court granted plaintiff's motion to vacate his guilty plea to the two aggravated counts of the indictment. Plaintiff was released from prison on January 3, 1983, after serving approximately five years in prison.

I.

In the instant suit, plaintiff alleges that but for defendant's negligent legal representation he would have served a maximum of forty months in a correctional facility. Plaintiff seeks damages for, among other things, the emotional anguish he sustained during the "extra" twenty months of confinement in a maximum security penitentiary.

Although not a guarantor against errors in judgment (citation omitted), an attorney is required to exercise on his client's behalf the knowledge, skill and ability ordinarily possessed and exercised by members of the legal profession similarly situated and to employ reasonable care and prudence in connection therewith. Where he breaches his duty he is answerable in damages only for losses which are proximately caused by his negligence. The burden of proving the causal relationship rests with the client (citations omitted). The test of proximate cause is satisfied where the negligent conduct is a substantial contributing factor in causing the loss. (citations omitted). The burden of proof must be carried by the presentation of competent credible evidence which proves material facts. It cannot be satisfied by conjecture, surmise or suspicion. (citations omitted).

*Lamb v. Barbour,* 188 N.J.Super. 6, 12, 455 A.2d 1122 (App.Div.1982).

In *Gautam v. DeLuca,* 215 N.J.Super. 388, 521 A.2d 1343 (App.Div.1987), plaintiffs brought an action for legal malpractice against their attorney for the negligent prosecution of a medical malpractice claim. Plaintiffs sought compensatory damages and damages for emotional distress. The court held that in the absence of egregious or extraordinary circumstances, damages for emotional distress were not recoverable in a legal malpractice action. The court started with the premise that an attorney is liable for damages which are proximately caused by his negligence. However, in determining what damages can be recoverable, the court focused upon the contract relationship whereby the attorney promised to prosecute his clients' claim so that they would be recompensed for their injuries. The parties had an essentially economic relationship. "In that context, the measure of damages is ordinarily the amount that the client would have received but for his attorney's negligence," and under these circumstances, "damages should be generally limited to recompensing the injured party

for his economic loss." *Id.* at 397, 521 A.2d 1343. Further, "such damages are generally shown by introducing evidence establishing the viability and worth of the claim that was irredeemingly lost." *Id.*

The court also based its holding upon public policy considerations:

> As a practical matter, there must be some convenient clamp or restriction placed upon a tortfeasor's otherwise boundless liability. The courts cannot serve as the answer for all of life's shortcomings and disappointments. Aggravation, annoyance and frustration, however real and justified, constitute unfortunate byproducts of daily living. Damages for idiosyncratic psychiatric reactions should not be permitted. Judicial lines must be drawn.
>
> . . . .
>
> *We emphasize that the relationship between the parties was predicated upon economic interest. The loss, if one occurred, was purely pecuniary.* (emphasis added).

The instant case can be distinguished from *Guatam v. DeLuca.* The relationship between plaintiff-client and defendant-attorney was not necessarily predicated upon economic interest. Plaintiff did not retain defendant to prosecute a claim for economic loss. Rather, defendant was retained to provide a defense to criminal prosecution. The loss that plaintiff complains of is not purely pecuniary. Rather, plaintiff complains of a twenty-month loss of liberty in a maximum security penitentiary. This court is bound by *Guatam v. DeLuca*, to the extent it requires me to focus upon the attorney-client relationship to determine what damages, if any, are recoverable by plaintiff. Accordingly, the issue before this court is whether plaintiff can recover damages for emotional distress when his relationship with defendant was predicated upon a liberty, rather than a purely economic, interest.

This case presents an issue which few courts have addressed. In *Geddie v. St. Paul Fire & Marine Ins. Co.,* 354 So.2d 718 (La.App.1978), *cert. denied,* 356 So.2d 1011 (La.1978), plaintiff prevailed in a legal malpractice action, recovering emotional distress damages for his unlawful confinement. The damages award was based upon prison confinement under a four-year sentence for a crime which had a maximum penalty of two years. By stipulation between the parties, the sole issues before the Louisiana Court of Appeals were the trial judge's method of calculating the term of excessive incarceration and the amount of the award, and therefore the court did not discuss the propriety of emotional distress damages for wrongful confinement. However, in reducing plaintiff's award, the court implicitly approved the trial court's decision to allow proof of such damages.

In *Bowman v. Doherty,* 235 Kan. 870, 686 P.2d 112 (1984), the Supreme Court of Kansas reversed a lower court's ruling that limited proof of emotional distress damages in a legal malpractice action to actual physical injury. The court found that "the act of the attorney which led to the injury suffered by his client was the failure of the attorney to act, which caused the client to be placed in jail and deprived of his freedom. One being negligently deprived of his freedom suffers an injury which could cause mental distress." *Id.* at 119.

In *Delesdernier v. Porterie,* 666 F.2d 116 (5th Cir.1982), *cert. denied,* 459 U.S. 839, 103 S.Ct. 86, 74 L.Ed.2d 81 (1983), emotional distress damages were awarded to the prevailing party in a legal malpractice action where the attorney negligently withdrew from a case. Although the issue on appeal was whether the trial court acted properly in granting a remittitur, the court found that "the evidence support[ed] a finding that [plaintiff] suffered some emotional distress from [defendant's] withdrawal from her case." *Id.* at 124. Again, the court implicitly approved the trial court's decision to allow proof of plaintiff's emotional distress.

The First Circuit has squarely addressed the issue of whether emotional distress damages are recoverable for the wrongful deprivation of liberty. In *Wagenmann v. Adams,* 829 F.2d 196 (1st Cir.1987), plaintiff brought a civil rights action against several police officers and a malpractice

action against his attorney. The police allegedly made a false arrest and, due to negligent representation by his attorney, plaintiff was confined to a psychiatric hospital. Plaintiff prevailed and was awarded damages for mental distress. On appeal, the attorney argued that his former client was not entitled to receive damages for emotional distress and that recovery in a legal malpractice action was limited to economic loss. In affirming the lower court, the First Circuit held that "an attorney who commits malpractice is liable to his client for any reasonably foreseeable loss caused by his negligence including emotional distress resulting from the loss of liberty." *Id.* at 222.

In this diversity case, this court must decide the issues in accordance with the law of New Jersey. *Erie Railroad Company v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Damages for emotional distress have been allowed by New Jersey courts in an increasing number and variety of contexts. *See, e.g., Ayers v. Jackson Township,* 106 N.J. 557, 525 A.2d 287 (1987) (fear of cancer by residents who alleged exposure to toxic waste may provide a basis for a claim of emotional distress); *Saunderlin v. E.I. DuPont Co.,* 102 N.J. 402, 508 A.2d 1095 (1986) (fear of cancer attributable to exposure to work place asbestos may provide a basis for a claim of emotional distress where injury is demonstrable by objective medical evidence); *Procanik by Procanik v. Cillo,* 97 N.J. 339, 478 A.2d 755 (1984), discussed below; *Evers v. Dollinger,* 95 N.J. 399, 471 A.2d 405 (1984) (negligent delay of surgery may cause emotional distress where delay exacerbated patient's disease); *Portee v. Jaffee,* 84 N.J. 88, 417 A.2d 521 (1980) (mother who watched seven-year old son suffer and die had cognizable claim for negligent infliction of emotional injury); *Berman v. Allan,* 80 N.J. 421, 404 A.2d 8 (1979) (emotional distress damages are appropriate in certain actions for medical malpractice); *Zahorian v. Russell Fitt Real Estate Agency,* 62 N.J. 399, 301 A.2d 754 (1973) (emotional distress damages may be awarded for the intentional violation of civil rights law); *Falzone v. Busch,* 45 N.J. 559, 214 A.2d 12 (1965) (emotional distress damages are recoverable where defendant operated automobile in a manner that put plaintiff in fear for her life); *NPS Corp. v. Insurance Co. of North America,* 213 N.J. Super. 547, 517 A.2d 1211 (App.Div.1986) (bodily injury as defined in insurance policy included claims for emotional distress caused by sexual harassment); *Strachan v. John F. Kennedy Memorial Hospital,* 209 N.J.Super. 300, 507 A.2d 718 (App.Div. 1986) (inappropriate handling of dead body may provide a basis for a claim of emotional distress); *Pushko v. Board of Trustees of Teachers' P & A,* 202 N.J.Super. 98, 493 A.2d 1309 (App.Div.1985), on remand 208 N.J.Super. 141, 505 A.2d 154 (App.Div. 1986) (teacher entitled to accidental disability pension where traumatic events caused psychiatric disability); *State v. Thompson,* 199 N.J.Super. 142, 488 A.2d 1044 (App. Div.1985) (robbing a store may cause mental or nervous shock to victim); *Eyrich for Eyrich v. Dam,* 193 N.J.Super. 244, 473 A.2d 539 (App.Div.1984), *cert. denied* 97 N.J. 583, 483 A.2d 127 (1984) (emotional distress damages recoverable by parents of child who was severely injured at circus even when specific physical injuries to parents are not alleged); *State v. Diaz,* 188 N.J.Super. 504, 457 A.2d 1223 (App.Div. 1983) (New Jersey Criminal Injuries Compensation Act defines "personal injury" as actual bodily harm, including mental or nervous shock); *Muniz v. United Hsps. Med. Ctr. Pres. Hsp.,* 153 N.J.Super. 79, 379 A.2d 57 (App.Div.1977) (parents of deceased child had cognizable claim for emotional distress against hospital where hospital staff misplaced corpse); *Lemaldi v. De-Tomaso of America,* 156 N.J.Super. 441, 383 A.2d 1220 (Law Div.1978) (emotional trauma caused by the continued, uncorrected malfunctioning of an automobile may support a cognizable claim for emotional distress where evidence is sufficient to prove actual injury).

In *Berman v. Allan, supra,* the parents of a child with Downs Syndrome brought a medical malpractice action against a doctor who failed to inform them of the availability of an amniocentesis procedure prior to

the child's birth. The court held that the mental and emotional anguish of the parents was compensable. The court noted that "courts have come to recognize that mental and emotional distress is just as 'real' as physical pain, and that its valuation is no more difficult." *Id.* 80 N.J. at 433, 404 A.2d 8.

The Supreme Court of New Jersey endorsed a cause of action for emotional distress in *Procanik by Procanik v. Cillo, supra.* In *Procanik,* an infant sought damages against several physicians for birth defects and an impaired childhood. The infant's parents sought damages for emotional distress and extraordinary medical expenses attributable to those defects. The court declined to recognize a cause of action for impaired childhood, preferring instead the cognizable claims of the parents. The court stated:

> We believe the award of the cost
> of extraordinary medical care to
> the child or the parents, when
> combined with the right of the
> parents to assert a claim for
> their own emotional distress,
> comes closer to filling the dual
> objectives of a tort system:
> the compensation of injured parties
> and the deterrence of future
> wrongful conduct.

*Id.* 97 N.J. at 355, 478 A.2d 755.

Following this line of New Jersey cases and considering the weight of authority in other jurisdictions, this court holds that under the circumstances of this case, plaintiff should be allowed to prove damages for emotional distress attributable to the extra twenty months of confinement in a maximum security penitentiary. Damages for emotional distress are generally proven by "medical evidence establishing substantial bodily injury or severe and demonstrable psychiatric injury proximately caused by the tortfeasor's conduct." *Guatam v. DeLuca, supra,* 215 N.J.Super. at 399, 521 A.2d 1343. Plaintiff will be allowed to go forward with such evidence in the damages portion of the trial.

## II.

The other issue before the court is whether the legal fees that plaintiff claims as damages should be reduced by the legal fees plaintiff would have incurred for a full trial to verdict in 1977. There is no New Jersey authority either mandating or precluding the deduction of attorney's fees which would have been charged or assessed in an underlying claim, the loss of which is the subject of a legal malpractice action. *Strauss v. Fost,* 213 N.J.Super. 239, 241, 517 A.2d 143 (App.Div.1986). Generally, "plaintiff must be put 'in as good a position as he would have been had the defendant kept his contract.' " *Id.* (citations omitted).

Presumably, plaintiff would have retained counsel for his defense had he pleaded not guilty to the two aggravated charges. Assuming, *arguendo,* that there existed at the time sufficient evidence to prosecute the aggravated charges, plaintiff would have expended funds for a full trial to verdict. This court does not feel compelled to speculate at this time on events that may or may not have occurred in 1977. The predicate for resolving this issue is whether a full trial to verdict would have been necessary. Evidence must be presented at trial to determine whether there was sufficient evidence for the United States Attorney to prosecute on the two aggravated charges, in order to determine whether there would have been a full trial to verdict on the aggravated charges. Accordingly,

IT IS on this 12th day of December, 1988 ORDERED that plaintiff can present evidence of emotional distress during the damages portion of the trial and;

IT IS FURTHER ORDERED that the issue of whether certain legal fees should be deducted from the ultimate award, if any, is reserved pending presentation of evidence at trial.